Zheng "Andy" Liu (SBN 279327)
Jingyi Guo (SBN 335448)
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
Telephone: 650.475.6289
Facsimile: 510.987.8411
Email: Andy.liu@aptumlaw.us
*Attorneys for Plaintiffs Palm Street*
*Capital LLC, Hailing Yu, and Jing Liao*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| PALM STREET CAPITAL LLC, HAILING YU, JING LIAO<br><br>Plaintiff,<br><br>v.<br><br>CAIXING XIE, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No:  5:22-cv-01932-NC<br><br>**PLAINTIFFS' CONSOLIDATED OPPOSTION TO DEFENDNT XIE'S FOUR DUPLICATED MOTIONS [ECF # 31-34]** |

## **TABLE OF CONTENT**

I.     PRELIMINIARY STATEMENT ........................................................6

II.    STATEMENT OF FACTS ..............................................................6

     A.     DEFENDANT'S PATTERN OF DELAYING AND MAKING
           MISREPRESENTATIONS IN COURT PROCEEDINGS.................6

     B.     DEFENDANT IS REPLICATING HIS DELAY STRATEGY FROM
           HIS OTHER CASES ..........................................................7

     C.     DEFENDANT DISHONESTLY CLAIMED THAT HE DID NOT
           KNOW ABOUT THIS LAWSUIT UNTIL SEPTEMBER 2022 ......10

     D.     CIRCUMSTANCES SURROUNDING THE DISMISSED STATE
           COURT CASE.................................................................11

     A.     DEFENDANT'S MOTION TO VACATE ORDER GRANTING
           SUBSTITUTE SERVICE (ECF 31) SHOULD BE DENIED ...........13

          1.     Inadvertent violation of local rule does not justify setting aside
               the order granting substitute service at Defendant's Saratoga
               Home..................................................................13

          2.     Defendant's state court motion provide no basis for setting
               aside the order granting substitute service at Defendant's
               Saratoga Home......................................................14

          3.     Defendant's Evidentiary objection provides no basis for
               setting aside the order granting substitute service at
               Defendant's Saratoga Home .....................................14

          4.     Defendant is not entitled to relief under Rule 60....................15

     B.     DEFENDANT'S MOTION TO SET ASIDE DEFAULT (ECF 32)
           SHOULD BE DENIED, OR CONDITIONALLY GRANTED
           AFTER DEFENDANT PAYS PLAINTIFF'S ATTORNEY'S FEES
           AND COSTS FOR SEEKING DEFAULT .......................................17

C.      DEFENDANT'S MOTION TO QUASH SERVICE AT HIS

SARATOGA HOME (ECF 33) SHOULD BE DENIED BECAUSE

SUCH SERVICE IS AURHOTIZED UNDER THE SETTLED LAW

............................................................................................19

D.      DEFENDANT'S MOTION FOR SANCTIONS (ECF 34) SHOULD

BE DENIED BECAUSE DEFENDANT HAD UNCLEANS

HANDS, BARRING HIM FROM EQUITY RELIFS SUCH AS

SANCTIONS AGAINST PLAINTIFFS ............................................20

IV.    CONCLUSION...............................................................................................21

**PLAINTIFFS' CONSOLIDATED OPPOSTION TO DEFENDNT XIE'S FOUR DUPLICATED MOTIONS [ECF # 31-34]**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Blount v. Conn. Gen. Life Ins. Co.*

    No. CV 01-1341-BR, 2002 U.S. Dist. LEXIS 25553 (D. Or. July 2, 2002)..................... 15

*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*

    375 F.3d 922, 926 (9th Cir. 2004).................................................................. 17

*Gaudio v. Critical Mass Indus. LLC*

    No. CV198214MWFAGRX, 2021 WL 3578304 (C.D. Cal. Apr. 27, 2021) ................... 19

*Hall v. Wright*

    240 F.2d 787 (9th Cir. 1957)........................................................................ 20

*In Hart v. Parks*

    No. CV00-07428ABC(RNBX), 2001 WL 636444 (C.D. Cal. May 31, 2001)................. 18

*Kendall-Jackson Winery, Ltd. v. Superior Court*

    76 Cal.App.4th 970 (1999)........................................................................... 21

*Kensington Apartment Properties, LLC v. Loanvest IX, L.P.*

    No. 19-CV-05749-VC, 2021 WL 5370259 (N.D. Cal. Nov. 18, 2021)........................... 18

*Lam v. City of Los Banos*

    976 F.3d 986 (9th Cir. 2020)......................................................................... 15

*Latshaw v. Trainer Wortham & Co.*

    452 F.3d 1097 (9th Cir. 2006)....................................................................... 15

*McCormick v. Cohn*

    CASE NO. CV 90-0323 H, 1992 U.S. Dist. LEXIS 21187 (S.D. Cal. July 31, 1992)..... 16

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*

    854 F.2d 1538 (9th Cir. 1988)....................................................................... 18

*Ornstein v. Canites*

    No. 18-CV-01616-PJH, 2019 WL 359984 (N.D. Cal. Jan. 29, 2019 .............................. 18

*Precision Co. v. Automotive Co.*

    324 U.S. 806 (1945) ........................................................................................ 20

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*

    324 U.S. 806 (1945) ........................................................................................ 20

*Pringle v. Cardall*

    No. 218CV02035WBSKJN, 2019 WL 1789690 (E.D. Cal. Apr. 24, 2019) ................... 18

*S. Shore Ranches, LLC v. Lakelands Co., LLC*

    No. 1:09-cv-105 AWI DLB, 2010 U.S. Dist. LEXIS 70147 (E.D. Cal. June 17, 2010) .. 20

*USAA Life Ins. Co. v. Poolat*

    No. CV 07-7512 ODW(FFMX), 2008 WL 11340057 (C.D. Cal. Apr. 22, 2008)............ 19

*Veracity Wireless, Inc. v. Virtual Fleet Mgmt., LLC*

    No. 17-CV-295 JLS (BLM), 2019 WL 4266550, at *8 (S.D. Cal. Feb. 26, 2019)........... 18

Wahoo Int'l, Inc, v. Phix Dr., Inc.

    No. 13CV1395-GPCBLM, 2015 WL 410347 (S.D. Cal. Jan. 29, 2015)........................ 19

*Wahoo Int'l, Inc. v. Phix Dr., Inc.*

    No. 13CV1395-GPC BLM, 2014 WL 6810663 (S.D. Cal. Dec. 2, 2014)....................... 19

*Zambrano v. Tustin*

    885 F.2d 1473 (9th Cir. 1989) ........................................................................... 14

**Statutes**

Federal Rules of Civil Procedure Rule 55 ................................................................. 17

Federal Rules of Civil Procedure Rule 60 ............................................................ 15, 16

**PLAINTIFFS' CONSOLIDATED OPPOSTION TO DEFENDNT XIE'S FOUR DUPLICATED MOTIONS**
**[ECF # 31-34]**

## MEMORANDUM OF POINTS OF AUTHORITIES

### I.  PRELIMINIARY STATEMENT

Relying on his same false statements and tortured interpretation of the law, Defendant's recent duplicate motions [ECF # 31-34] should be denied; if the default against Defendant were to be set aside, Defendant should pay Plaintiffs reasonable attorney's fees and costs for being forced to obtain the default.

Defendant knew about this lawsuit since its inception but chose to—in his Counsel's own words, "calendar and monitor"—it in the background, instead of timely responding. Defendant surfaced, on the eve of the default judgment hearing, dishonestly claiming that he had no actual notice.

First, by (i) deliberately not responding when he should and (i) now making false representations to this Court, Defendant forfeited the right to contest such intermediary rulings as granting alternate service on Defendant's California home (ECF # 31) and the resulting service of process (ECF # 33).

Second, Defendant also forfeited the right to contest the default (ECF # 32), because he allowed the default to be entered, while "calendar[ing] and monitor[ing]" in the background.

Third, Defendant's sanction motion is without merit: having made numerous misrepresentations to this Court, Defendant has unclean hands and is barred from seeking such equitable relief as sanctions from this Court.

### II.  STATEMENT OF FACTS

#### A.  DEFENDANT'S PATTERN OF DELAYING AND MAKING MISREPRESENTATIONS IN COURT PROCEEDINGS

A party to more than a half dozen pending lawsuits in the Bay Area alone, Defendant does nothing but delaying. In the *five* cases in which he is a defendant, Defendant always (i)

appeared shortly after a default was taken or requested against him and (ii) claimed last-minute predicament to avoid impending deposition or trial.  (Declaration of Jingyi Guo, "Guo Decl." ¶ 3)

Notably, the same Counsel represents Defendant in all these defense-by-delay cases, including this one. A cursory review of the Counsel's filings in the Northern District reveals that the Counsel is simply replicating his *defense-by-delay and by-ambush* tactic here. The Counsel always claimed that he did not represent a client after being provided with Summons and Complaint, but immediately appeared on behalf of that client after a default was taken or requested. The Counsel always filed an *ex parte* application accompanied by a sanction request, seeking attorney's fees and the like against his opponent. When his ambush attempt was thwarted and last-minute request for relief denied, the Counsel would request to withdraw shortly before trial, again attempting to halt the proceeding. When his requests to withdraw were denied, the Counsel promptly settled. Here, Defendant and his Counsel continue this pattern. (*Id*. ¶ 4)

### B.  DEFENDANT IS REPLICATING HIS DELAY STRATEGY FROM HIS OTHER CASES

A review of court records in the Bay Area counties show that Defendant is a party to at least **seven lawsuits**, most of which alleged, as this case alleges, that Defendant breached written contracts. Case numbers 20CV366847 and 20CV366358 currently pending before the Santa Clara County Superior Court classically demonstrate Defendant's litigation by delay tactics. (*Id*. ¶ 5)

First, in Case No.: 20CV366847, on August 31, 2020, Defendant appeared after a default was taken against him—though the same Counsel in this case.  After vacating his default, Defendant initially agreed to a September 19, 2022 trial, but requested, *ex parte*, a continuance **merely four days** before the September 19, 2022 trial, claiming he was sick and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

required hospitalization. The Court continued the trial to December 19, 2022. Defendant is expected to file another *ex parte* motion to continue trial with some excuses in December 2022. (*Id*. ¶ 6)

Second, in Case No.: 20CV366358, on February 9, 2021, Defendant appeared through the same Counsel, after a right to attach order and a temporary protective order were issued against him.  Defendant initially agreed to a March 2, 2022 settlement conference, but requested, *ex parte*, a continuance **merely six days** before the settlement conference were to take place, claiming he was unable to testify under California law while he was in China (even though no testimony is required at a settlement conference). After the Court set an October 17, 2022 trial date, **merely four days before trial,** Defendant again requested, *ex parte*, a continuance, again claiming he was sick. The Court continued the trial date to May 2023. Defendant is expected to file his third *ex parte* motion to continue trial with some excuses in May 2023. (*Id*. ¶ 7)

In sum, as shown below, Defendant—through the same Counsel who represents him here—consistently delayed more than a half dozen of local lawsuits. Defendant and his Counsel's identical assertion here (that they were unaware of all these lawsuits) lack any veracity. (*Id*. ¶ 8)

| No. | Case Number | Filing Date | Causes of Action | Status of the case |
|---|---|---|---|---|
| 1 | 20CV366847 (Santa Clara) | 05/28/2020 | Defendant was sued for **breach of investment agreement and fraud.** | On August 31, 2020, **default** was taken against Defendant . Defendant vacated the default and filed an answer on March 3, 2021.<br><br>Defendant requested a continuance of the trial merely **four days before the trial date**, claiming he was sick and recommended hospitalization. The Court fixed a December 2022 trial date and asked Defendant to be present for trial. |
| 2 | 20CV366358 (Santa Clara) | 4/29/2020 | Defendant was sued for **breach of real estate investment contract.** | Defendant appeared on February 9, 2021, after a right of attach order and a temporary protective order were entered against him.<br><br>Defendant requested a continuance merely **six days before the settlement conference**, stating he was unable to be sworn under California law while he is in China territory.<br><br>Defendant requested a continuance merely **four days before trial**, stating he required hospitalization. |
| 3 | 20CV364355 (Santa Clara) | 2/21/2020 | Defendant alleged his part-time office manager converted company assets and defrauded him. | The officer manager has filed a cross-complaint against Defendant . |
| 4 | 20CV372586 (Santa Clara) | 10/21/2020 | Defendant alleged his realtor defrauded him in | The case was consolidated and is still pending. |

**PLAINTIFFS' CONSOLIDATED OPPOSTION TO DEFENDNT XIE'S FOUR DUPLICATED MOTIONS [ECF # 31-34]**

| | | | a real estate transaction. | |
|---|---|---|---|---|
| 5 | 20-civ-04191 (San Mateo) | 09/28/2020 | Defendant was sued for **breach of contract.** | Defendant appeared shortly after Plaintiff served him through publication. |
| 6 | 19-civ-01548 (San Mateo) | 03/18/2019 | Defendant sued his business partners. | Defendant lost the suit and was required to costs.  Defendant never paid the costs as ordered and his bank accounts were garnished. |

### C.  DEFENDANT DISHONESTLY CLAIMED THAT HE DID NOT KNOW ABOUT THIS LAWSUIT UNTIL SEPTEMBER 2022

To delay, Defendant asserts he did not know about this lawsuit September 13, 2022[1].

Categorically false. (*Id*. ¶ 9) Written records show that (i) Plaintiffs provided Defendant a

copy the Summons and Complaint right after they filed this case, and that (ii) Plaintiffs'

counsel similarly provided Defendant's Counsel a copy of the Summons and Complaint a

week later on April 8, 2022. (*Id*. ¶ 10 and  Ex. A)

On **May 11, 2022**, Defendant's Counsel responded as follows:

"This is Tyson Lin, a paralegal of Mr. Jew. **Mr. Jew currently doesn't**

**represent Mr. Xie in this particular case**." (*Id*. ¶ 11 and Ex. B)

Tellingly, Mr. Lin's May 11, 2022 email includes an excerpt of his email with

Defendant's Counsel, Mr. Jew. As shown, **on May 3, 2022**, Mr. Jew instructed Mr. Lin to

"Please calendar and monitor this == one of the XIE case [sic]." (*Id*. ¶ 12 and Ex. B)

Thus, dangerously close to perjury and may have already crossed the line is

Defendant and his Counsel's declarations that they did know Defendant "was a party to the

current action on or around September 10, 2022, through Google search." (ECF 23-1;

Declaration of Leon Jew, ¶ 8.) Defendant and his Counsel have now removed this testimony

from their recent declarations (*see* ECF 31-24, the accompanying declarations of Mr. Leon

---

[1] Declarations of Defendant Caixing Xie accompanying ECF 31-34, ¶ 17.

Jew), suggesting that the Counsel's original declaration was false. (*Id*. ¶ 13)



> **From:** LEON JEW <leon.jew@dahyee.com>
> **Sent:** Tuesday, May 3, 2022 10:05 AM
> **To:** Tyson Lin <tyson.lin@dahyee.com>
> **Subject:** Fw: Palm Street Capital v. Xie - Service Acceptance
>
> Please calendar and monitor this == one of the XIE case.
>
> **From:** Andy Liu <andy@quan.legal>
> **Sent: Friday, April 8, 2022 10:19 PM**
> **To:** Jillian Guo <jyiguo.1207@gmail.com>; Alice Chao <alice.chao@dahyee.com>
> **Cc:** LEON JEW <leon.jew@dahyee.com>
> **Subject:** Re: Palm Street Capital v. Xie - Service Acceptance
>
> Summons and complaint attached for your ease of reference.
>
> Thank you.
>
> Andy Liu
> *Attorney*
> *Aptum Law | 650-475-6289 | Andy.Liu@AptumLaw.us*
>
> On Fri, Apr 8, 2022 at 7:35 PM Jillian Guo <jyiguo.1207@gmail.com> wrote:
> Dear Counsel,
>
> Our client has filed a case against Mr. Xie. Please let us know if you will accept service for Mr. Xie.
>
> Thank you,
> Jingyi Guo

(Guo Decl. ¶ 13)

Thus, documentary evidence proves that that Defendant and his Counsel knew about this case since ***April 8, 2022***. They strategized for a month and decided that not filing a responsive pleading would serve their best interest. Only when faced with an impending default judgement in September 2022, they magically appeared and falsely claimed that they did now know about this lawsuit until September 13, 2022. (*Id*. ¶ 14)

### D. CIRCUMSTANCES SURROUNDING THE DISMISSED STATE COURT CASE

At the outset, Plaintiffs notify the Court that State Court case has been dismissed without prejudice, leaving this case the sole case between the parties. (*Id*. ¶ 15 and Ex. C.)

**PLAINTIFFS' CONSOLIDATED OPPOSTION TO DEFENDNT XIE'S FOUR DUPLICATED MOTIONS [ECF # 31-34]**

Next, Plaintiffs and their counsels sincerely apologize to the Court, the opposing counsel, and Defendant for their *inadvertent* confusion. No fraud, however, was intended; neither did Defendant suffered any prejudice. (*Id*.)

The procedural history about the State Court Case and this case are as follows:

### a)  In the State Court Case

1.  On October 19, 2021, Plaintiffs filed a verified complaint with the Santa Clara Superior Court after Defendant ignored their countless demand for repayment under written contracts.
2.  The complaint made no allegation about Defendant's residency or citizenship[2], about which Plaintiffs were unsure. Because Defendant repeatedly told Plaintiffs he was prevented from coming back to the United States due to Covid-19 travel restrictions and his temporary work in China, and because Defendant still owns his Saratoga home.
3.  Plaintiffs effectuated substitute service on Defendant his Saratoga home on November 06, 2021, and when no responsive was filed, filed a request for default on January 06, 2021.
4.  Due to staff shortage at the Santa Clara Superior Court, a request for default was taking five to six months to be process.
5.  On February 6, 20222, Defendant filed a motion to quash service, in which Defendant—for the first time—declared that he has been residing in China and has no intention of returning to California.
6.  The relevant motion procedure at the State Court is that a moving party notices a motion without a hearing date; the clerk assigns a hearing date when accepting the motion filing; then the moving party notices the assigned hearing date to opposing parties.
7.  Defendant, however, never noticed the actual hearing date of his motion until September 21, 2022—less than 24 hours before the September 22, 2022 hearing was to take place—when he contested the Santa Clara County Superior Court tentative ruling that his motion to quash be taken off calendar.  (Guo Decl. Ex. D)
8.  On September 22, 2022, concluding that Defendant failed to properly notice his motion, the Santa Clara County Superior Court continued the motion hearing to October 27, 2022.
9.  On September 22, 2022, State Court Action was dismissed without prejudice. (Guo Decl. Ex. C)

---

[2] No residency or citizenship was needed because the Santa Clara Superior Court has general subject matter jurisdiction over dispute that arose in Santa Clara County.

**PLAINTIFFS' CONSOLIDATED OPPOSTION TO DEFENDNT XIE'S FOUR DUPLICATED MOTIONS**
**[ECF # 31-34]**

### b)  In this Case

1. Based on Defendant's February 6, 2022 declaration (that he has been residing in China and has no intention of returning to California), Plaintiffs concluded that diversity jurisdiction existed: Plaintiffs' are citizens of various states in the United States, and Defendant is a citizen of China.
2. On March 26, 2022, Plaintiffs filed this case against Defendant for fraudulent transfer based on diversity jurisdiction.
3. On April 29, 2022, after several failed attempts to serve Defendant and his Counsel, Plaintiffs applied for substitute service at Defendant's Saratoga home. (ECF 8.)
4. Between March 26 and April 29, 2022, Plaintiffs repeatedly asked Defendant and his Counsel to consider whether to accept the service of process; both repeatedly refused.
5. On May 3, 2022, however, Defendant's Counsel instructed his paralegal to "**Please calendar and monitor this == one of the XIE case [sic]**."
6. On June 17, 2022, Plaintiffs filed the First Amended Complaint, adding all claims in his State Court Case. Plaintiffs inadvertently failed dismiss the State Court Action.
7. On July 11, 2022, the clerk entered default against Defendant on the First Amended Complaint.
8. On August 16, 2022, Plaintiffs filed a motion to default judgment against Defendant and noticed a hearing for September 21, 2022.
9. On September 15, 2022—**three business** days before the default judgment hearing— Defendant appeared, claiming that he never had actual notice of this lawsuit.
(Guo Decl. ¶ 17)

## III.   ARGUMENT

### A.  DEFENDANT'S MOTION TO VACATE ORDER GRANTING SUBSTITUTE SERVICE (ECF 31) SHOULD BE DENIED

Resisting the substitute service at his Saratoga Home, Defendant make three arguments: (i) failing to dismiss the State Case Court violates Local Rule 3-123(a); (ii) there existed a pending motion to quash in the State Court case, and (iii) Plaintiff's attorney Ms. Guo perpetrated fraud on this Court. None has merit.

### a.  *Inadvertent Violation Of Local Rule Does Not Justify Setting Aside The Order Granting Substitute Service At Defendant's Saratoga Home*

First, Plaintiffs inadvertent mistaken does not justify set aside the order granting substituted service. (*See* ECF 9.) Penalties are not levied against a party or her counsel for

1   a violation of the local rules, "absent grossly negligent, reckless, or willful conduct."

2   *Zambrano v. Tustin*, 885 F.2d 1473, 1494 (9th Cir. 1989)

3          Here, the violation was brief and inadvertent, and Plaintiffs have rectified the

4   mistaken as soon as they became aware. Defendant suffered no prejudice, because he had

5   been "monitor[ing]" this case in the background and thus knew exactly what has taken place

6   here. Next, Defendant himself argues that his Rule 12 motion to quash service here is made

7   on identical grounds as those raised in the State Court case. Defendant did not have to

8   duplicate his efforts.

9

10          **b.   *Defendant's State Court Motion Provide No Basis For Setting Aside***
               ***The Order Granting Substitute Service At Defendant's Saratoga Home***

11          Second, Defendant's state court motion concerns different legal issues and is

12   irrelevant to the substitute service issue here. Defendant's state court motion argues that he

13   was in China and his tenant was not authorized to accept service on his behalf. (Guo Decl. ¶

14   18). In contrast, here, the Court granted substitute service on the ground that, even if

15   Defendant now resides in China, his Saratoga Home could still be used to serve him, given

16   that the underlying contracts were formed in California and that Defendant had been

17   avoiding service. (*See* ECF 9.) Thus, even assuming Defendant's state court motion to quash

18   has merit (which it does not) and Defendant has not lied to the Court about when he became

19   aware of this case (which he has), Defendant's state court motion has no bearing on the

20   substitute service granted in ECF 9.

21

22          **c.   *Defendant's Evidentiary Objection Provides No Basis For Setting Aside***
               ***The Order Granting Substitute Service At Defendant's Saratoga Home***

23          Third, Defendant's assertion that Ms. Guo perpetuated fraud on this Court is simply

24   mistaken. In fact, Defendant asserts that Ms. Guo's declaration in support of the application

25   for substitute service is objectionable (ECF 32), because Ms. Guo had no personal

26

27

28

knowledge about how the substitute service was effectuated, given that Ms. Guo was not personally present. (ECF 21; 10-14.)

Whether Ms. Guo's declaration is objectionable as lacking personal knowledge, however, is merely an evidential issue—not a matter of fraud. Defendant has not made any evidentiary objection and has thus waived this issue. *See Lam v. City of Los Banos*, 976 F.3d 986 (9th Cir. 2020).

Next, attorney declarations are acceptable when testifying about when and where certain procedural issues took place during a litigation. *See Blount v. Conn. Gen. Life Ins. Co.*, No. CV 01-1341-BR, 2002 U.S. Dist. LEXIS 25553 (D. Or. July 2, 2002) ("Attorneys generally participate in and, therefore, have personal knowledge of only those *matters that occurred during the course of litigation such as when and where a deposition took place*.")

Here, Ms. Guo reviewed the Plaintiffs' service attempts and discussed the service of process issues with Plaintiffs. (Guo Decl. ¶ 19). Ms. Guo thus had required personal knowledge to make the declaration at issue.

### d. Defendant Is Not Entitled To Relief Under Rule 60

Fourth, relief under Rule 60 (1) and (3) is unavailable to Defendant.

> **Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret** through subsequently-gained knowledge that corrects the erroneous legal advice of counsel. **For purposes of subsection (b)(1), parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel**. This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct. Such mistakes are more appropriately addressed through malpractice claims.
> (*Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101-02 (9th Cir. 2006); emphasis added.)

Here, Defendant is not entitled to relief under Rule 60(b)(1). It is undisputable that Defendant's Counsel knew about the request for default, as he was "calendar[ing] and monitor[ing]" this litigation before the default was taken. *See* ECF 23-1; Declaration of

Leon Jew, ▐ 8. Defendant Counsel either intentionally or negligently allowed the default to be entered. "A party will not be released from a poor litigation decision made because of inaccurate information or advice, even if provided by an attorney." *Ibid*.

Similar, Defendant cannot even make a prima facia Rule 60(b)(3) case.

> Under Rule 60(b)(3), the court may relieve a party from the judgment based on fraud, misrepresentation, or other misconduct. The moving party must establish the culpable conduct by *clear and convincing evidence*. *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1987). In most circumstances, the moving party also must demonstrate the culpable conduct *prevented its opportunity to fully and fairly defend the action*. Bunch v. United States, 680 F.2d 1271, 1283 (9th Cir. 1982).
> (*McCormick v. Cohn*, CASE NO. CV 90-0323 H, 1992 U.S. Dist. LEXIS 21187 (S.D. Cal. July 31, 1992); emphasis added.)

Here, Defendant cannot establish culpable conducts by clear and convincing evidence, nor that the alleged fraud "*prevented its opportunity to fully and fairly defend the action.*"

As explained above, whether Ms. Guo had personal knowledge to make her declaration is a matter of evidentiary objection, not fraud. Second, Defendant was never "*prevented its opportunity to fully and fairly defend the action,*" because his Counsel had always been "calendar[ing] and monitor[ing] this == one of the XIE case [sic]." (Guo Decl. ¶ 12 and Ex. B). Defendant simply allowed default to be entered, only to formally appear on the eve of the default judgment hearing—to delay this case, as he had done in seven other cases. *See supra,* Section II.B.

In fact, Defendant appears to have perpetuated fraud on this Court by claiming that he did know he "was a party to the current action on or around September 10, 2022, through Google search." *See* ECF 23-1; Declaration of Leon Jew, ▐ 8.

In sum, Defendant Motion to set aside the order granting substitute service at his Saratoga Home should be denied.

1

2

### B. DEFENDANT'S MOTION TO SET ASIDE DEFAULT (ECF 32) SHOULD BE DENIED, OR CONDITIONALLY GRANTED AFTER DEFENDANT PAYS PLAINTIFF'S ATTORNEY'S FEES AND COSTS FOR SEEKING DEFAULT

3

4

#### a. *Defendant's Motion To Set Aside Default Should Be Denied, Because Defendant Has Always Been Aware Of This Lawsuit And Chose Not To Timely Respond*

5

Defendant's motion to vacate default repeats the same grounds he raised in the

6

Motion to set aside order granting substitute service. *See* ECF 32 *generally*.  This Motion

7

should thus be denied for at least the reasons explained above.

8

9

Fed. R. Civ. P. 55(c) is the rule to apply when setting aside entry of default. Under this rule, a court may set aside an entry of default for good cause. ***The burden of establishing good cause falls on the moving party***. The factors that must be considered to evaluate whether good cause exists are: (1) whether the party seeking to set aside default engaged in culpable conduct that led to the default; (2) whether the party seeking to set aside default had a meritorious defense; and (3) whether setting aside default would prejudice the non-moving party.

10

11

12

13

(*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004); emphasis added.)

14

Here, Defendant cannot establish the required good cause. First, Defendant engaged

15

16

in culpable acts by (1) first beginning "calendar[ing] and monitor[ing] this" case in May

17

2022 and allowed the default to be entered in July 2022, only to formally appear on the eve

18

of the default judgment hearing, and (2) then falsely claimed to this Court that he did not

19

know about this lawsuit until September 2022 during a Google search. Second, Defendant

20

has no meritorious defense. This is a breach of written contract case. Defendant borrowed

21

money from Plaintiffs but refused to repay. Defendant is a party to the written contracts but

22

claiming that that he is not personally liable to the debts. ECF 32, 17:24-28.  There can be

23

no question that a party to a contract is liable to the debts incurred on the contract.  Third,

24

25

Plaintiffs will suffer financial harm for prosecuting the default and default judgment.

26

In sum, Defendant's motion to vacate default should be denied under Rule 55(c).

27

#### b. *If The Default Were To Be Vacated, Defendant Should Pay Plaintiffs' Attorney's Fees And Costs In Obtaining The Default*

28

---

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDNT XIE'S FOUR DUPLICATED MOTIONS**
**[ECF # 31-34]**

It is necessary to "protect[] the non-defaulting party" against abusive dilatory litigation tactics—by imposing conditions on vacating a default. *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec,* (9th Cir. 1988) 854 F.2d 1538. To that end, defaulting party are usually ordered to pay the non-defaulting party attorney's fees and costs for being forced to pursue a default judgment motion.

In *Ornstein v. Canites*, No. 18-CV-01616-PJH, 2019 WL 359984, at *2 (N.D. Cal. Jan. 29, 2019, the court finds that plaintiffs have incurred unnecessary legal expenses as a result of defendants' conduct. In addition, the court finds that the requested attorneys' fees reasonably compensate plaintiffs for costs incurred obtaining the entries of default and responding to the defendants' motion to set aside those defaults.

In *Kensington Apartment Properties, LLC v. Loanvest IX, L.P.*, No. 19-CV-05749-VC, 2021 WL 5370259, at *1 (N.D. Cal. Nov. 18, 2021), defendants' default was conditionally granted based on "promptly reimbursing the plaintiff for its fees and costs totaling $26,933."

In *Veracity Wireless, Inc. v. Virtual Fleet Mgmt., LLC*, No. 17-CV-295 JLS (BLM), 2019 WL 4266550, at *8 (S.D. Cal. Feb. 26, 2019), the Court conditionally vacated the default "subject to Defendant's PAYMENT of Plaintiff's attorneys' fees and costs incurred in securing the Clerk's entry of default (ECF No. 10), opposing Defendant's Motion to Set Aside (ECF No. 17), and filing and briefing its Motion for Entry of Judgment (ECF Nos. 16, 20)."

This approach has been similar adopted by numerous district courts in California. *See In Hart v. Parks*, No. CV00-07428ABC(RNBX), 2001 WL 636444, at *5 (C.D. Cal. May 31, 2001); *Pringle v. Cardall*, No. 218CV02035WBSKJN, 2019 WL 1789690, at *1 (E.D. Cal. Apr. 24, 2019); *Wahoo Int'l, Inc. v. Phix Dr., Inc*., No. 13CV1395-GPC BLM,

2014 WL 6810663, at *4 (S.D. Cal. Dec. 2, 2014), amended sub nom. Wahoo Int'l, Inc, v.

Phix Dr., Inc., No. 13CV1395-GPCBLM, 2015 WL 410347 (S.D. Cal. Jan. 29, 2015);

*USAA Life Ins. Co. v. Poolat*, No. CV 07-7512 ODW(FFMX), 2008 WL 11340057, at *3

(C.D. Cal. Apr. 22, 2008); and *Gaudio v. Critical Mass Indus. LLC*, No.

CV198214MWFAGRX, 2021 WL 3578304, at *3 (C.D. Cal. Apr. 27, 2021)

Here, as shown in the attached Exhibits, Plaintiffs incurred at least $7888.95 in

securing the default and pursuing the default judgment against Defendant. (Guo Decl., ⁋ 20

and Ex.D)

Defendant should be ordered to reimburse Plaintiffs at least $7888.95, because he

has been "monitoring" this case and chose not to take any action, until the eve of the default

judgment hearing.

In sum, the default should not be set aside, because Defendant knew about this

lawsuit from its inception but chose not to timely respond. If the default were to be set aside,

it should be conditioned on Defendant paying Plaintiffs at least $7888.95.

### C.  DEFENDANT'S MOTION TO QUASH SERVICE AT HIS SARATOGA HOME (ECF 33) SHOULD BE DENIED BECAUSE SUCH SERVICE IS AURHOTIZED UNDER THE SETTLED LAW

Defendant's motion to quash service repeats the same grounds he raised in the

Motion to set aside order granting substitute service. See ECF 32 generally.  This Motion

should thus be denied for at least the reasons explained above.

Further, Defendant misconstrued the facts and law regarding the application for

substitute service at his Saratoga Home.

Defendant agrees that he still owns the Saratoga Home, but disputes that he resides

there. This argument misses the point: the application for substitute service was not made

based on whether Defendant was residing at the Saratoga Home or not. Rather, Plaintiffs

applied for substitute service on "any adult currently residing at Defendant Xie's Saratoga,

California home" because (i) "Defendant Xie has actual knowledge of this action but kept evading the service of process", (ii) "Defendant has actual notice of this action through his Pleasanton, California counsel Leon Jew and the Dahyee Law Group," and (iii) "Defendant received the PDF copies of the Complaint and Summons through WeChat." (ECF 4:23-5:9.)

As such, Defendant's present argument that the substitute service was improper because he was not residing at his Saratoga Home has no bearing on the application and the grant of substitute service.  Defendant's present motion to quash based on supposed non-compliance of Rule 4's residency required is misguided and should be denied.

### D.   DEFENDANT'S MOTION FOR SANCTIONS (ECF 34) SHOULD BE DENIED BECAUSE DEFENDANT HAD UNCLEANS HANDS, BARRING HIM FROM EQUITY RELIFS SUCH AS SANCTIONS AGAINST PLAINTIFFS

Sanctions may be imposed under Court's equitable power. *See S. Shore Ranches, LLC v. Lakelands Co., LLC*, No. 1:09-cv-105 AWI DLB, 2010 U.S. Dist. LEXIS 70147 (E.D. Cal. June 17, 2010).

"*[H]e who comes into equity must come with clean hands*" is a "self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [other party]." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). **He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim**. (*Precision Co. v. Automotive Co*., 324 U.S. 806, 814-815 (1945); *Hall v. Wright,* 240 F.2d 787, 794-795 (9th Cir. 1957).)

"The unclean hands doctrine **protects judicial integrity** and **promotes justice**. It protects judicial integrity because allowing a plaintiff with unclean hands to recover in an action creates doubts as to the justice provided by the judicial system. Thus, precluding

recovery to the unclean plaintiff protects the courts, rather than the opposing party's, interests. [Citations.] The doctrine promotes justice by making a plaintiff answer for his own misconduct in the action. It prevents 'a wrongdoer from enjoying the fruits of his transgression." *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal.App.4th 970, 981 (1999).

Here, the doctrine of unclean hands bars Defendant from seeking such equitable remedies as sanctions against Plaintiff. Defendant (1) first began "calendar[ing] and monitor[ing] this" case in May 2022, (2) allowed the default to be entered in July 2022, (3) only to formally appear on the eve of the default judgment hearing, and (4) falsely claimed to this Court that he did not know about this lawsuit until September 2022 during a Google search.

Having misrepresenting his actual notice of this litigation to the Court, Defendant is barred from seeking sanctions against Plaintiffs.

**IV.     CONCLUSION**

Relying on his same false statements and tortured interpretation of the law, Defendant's recent duplicate motions [ECF # 31-34] should be denied; alternatively, Defendant should pay Plaintiffs reasonable attorney's fees and costs as a condition for vacating his default.

Dated:  November 18, 2022                                    Respectfully submitted,

By  _____
Zheng "Andy" Liu (SBN 279327)
*Attorney for Plaintiffs*

**PLAINTIFFS' CONSOLIDATED OPPOSTION TO DEFENDNT XIE'S FOUR DUPLICATED MOTIONS
[ECF # 31-34]**