Zheng "Andy" Liu (SBN 279327)
Jingyi Guo (SBN 335448)
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
Telephone: 650.475.6289
Facsimile: 510.987.8411
Email: Andy.liu@aptumlaw.us
*Attorneys for Plaintiffs Palm Street Capital LLC, Hailing Yu, and Jing Liao*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PALM STREET CAPITAL LLC, HAILING YU, JING LIAO<br><br>Plaintiff,<br><br>v.<br><br>CAIXING XIE, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No: 5:22-cv-01932-NC<br><br>**PLAINTIFF YU'S REPLY TO DEFENDANT'S OPPOSITION TO APPLICATION FOR WRIT OF ATTACHMENT** |

# PLAINTIFF YU'S REPLY TO DEFENDANT'S OPPOSITION TO APPLICATION FOR WRIT OF ATTACHMENT

## A. PRELIMINARY STATEMENT

Having recently had a $650,000 judgement entered against him and facing four other similar debt collection trials, Defendant Xie's attempts to evade liability by making baseless accusations.

During his December 19, 2022 trial in Santa Clara Court case no.: 20-CV-366847, Xie testified that (1) plaintiffs there "threatened" him" into signing the written contracts on which he was sued; that (2) he was "scared" and did not recall who affixed his signatures to those written contracts; and that (3) the plaintiffs fraudulently obtained and attached copies of his passport and ID card to the written contracts. Ruling, *twice*, that Xie "was not credible," the Hon. Eric Geffon entered the $650,000 debt judgement against Xie *on the spot*. (Declaration of Zheng Liu (Liu Decl.), ¶¶ 2-3; Ex. A.)

Here, Xie repeats the same bonus the-contract-does-not-bound-me defense. Namely, Xie makes three excuses to oppose the writ of attachment. First, Xie claims that Plaintiff Yu's supporting declaration is perjurious and self-contradictory. Second, Xie claims that he is a non-California resident and did not engage in a qualified trade while he incurred the underlying debt. Third, Defendant Xie vows to file crossclaims against Plaintiffs.

What Xie does not deny here, however, is dispositive. (A) Xie does not deny that he received $1 million from Plaintiff Yu under a written contract for a commercial real estate development project; (B) Xie does not deny that he had paid back only $266,700 despite his numerous promises to pay back the full $1 million in addition to interest and profit share; and (C) Xie does not deny that he still owes at least $733,300 to Plaintiff Yu.

All statutory requirements having been met, a writ of attachment should issue.

**B. ARGUMENTS AND AUTHORITIES**

1. **Attachment against non-California residents like Xie may be issued "in any action for the recovery of money"—not limited to contract-based claims**

Under Cal. Code Civ. Proc. § 483.010, a California resident's property may be attached ***based on a contract-based claim for money***. *See* the statutory text in Cal. Code Civ. Proc. § 483.010 reproduced verbatim below for the Court's ease of reference.

> *(a) Except as otherwise provided by statute, an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees.*
> (b) An attachment may not be issued on a claim which is secured by any interest in real property arising from agreement, statute, or other rule of law (including any mortgage or deed of trust of realty and any statutory, common law, or equitable lien on real property, but excluding any security interest in fixtures subject to Division 9 (commencing with Section 9101) of the Commercial Code). However, an attachment may be issued where the claim was originally so secured but, without any act of the plaintiff or the person to whom the security was given, the security has become valueless or has decreased in value to less than the amount then owing on the claim, in which event the amount to be secured by the attachment shall not exceed the lesser of the amount of the decrease or the difference between the value of the security and the amount then owing on the claim.
> (c) If the action is against a defendant who is a natural person, an attachment may be issued only on a claim which arises out of the conduct by the defendant of a trade, business, or profession. An attachment may not be issued on a claim against a defendant who is a natural person if the claim is based on the sale or lease of property, a license to use property, the furnishing of services, or the loan of money where the property sold or leased, or licensed for use, the services furnished, or the money loaned was used by the defendant primarily for personal, family, or household purposes.
> (d) An attachment may be issued pursuant to this section whether or not other forms of relief are demanded.

(Cal. Code Civ. Proc. § 483.010; emphaiss added.)

Grounds for issue a writ against **non-California resident's** properties are, however, *broader*. "**Notwithstanding subdivision (a) of Section 483.010** [the attachment statute provided above], an attachment may be issued **in any action for the recovery of money brought against** …. [a] **natural person who does not reside in this state**…." (Cal. Code

3
**PLAINTIFF YU'S REPLY TO DEFENDANT'S OPPOSITION TO APPLICATION FOR WRIT OF ATTACHMENT**

Civ. Proc. § 492.010; emphasis added.)  *See* the statutory text in Cal. Code Civ. Proc. § 492.010 reproduced verbatim below for the Court's ease of reference.

> Notwithstanding subdivision (a) of Section 483.010, **an attachment may be issued in any action for the recovery of money brought against** any of the following:
> (a) **A natural person who does not reside in this state**.
> (b) A foreign corporation not qualified to do business in this state under the provisions of Chapter 21 (commencing with Section 2100) of Division 1 of Title 1 of the Corporations Code.
> (c) A foreign partnership which has not filed a designation pursuant to Section 15800 of the Corporations Code.

(Cal. Code Civ. Proc. § 492.010; emphasis added.)

Here, the parties stipulated that Xie is a non- California resident: the application for writ of attachment identifies Xie as a non-California resident. (ECF 48; items 2.a.(2).); Xie agrees. (ECF 57: Opp., 2:21-22 and 5:13-17)

Thus, "an attachment may be issued in "*any action* for the recovery of money brought against" Xie under Cal. Code Civ. Proc. § 492.010(1). The heightened requirement under Cal. Code Civ. Proc. § 483.010 (a) that the underlying "*claim or claims for money, each of which is based upon a contract, express or implied"* does not apply. Because the non-resident attachment statute (Cal. Code Civ. Proc. § 492.010) applies "[n]otwithstanding subdivision (a) of Section 483.010."

**2. Attachment should issue because Xie does not dispute that he owes Plaintiff Yu $733,100**

As a preliminary matter, the parties having stipulated that Xie is a non-California resident, an attachment against Xie does not require a contract-based money claim. (Cal. Code Civ. Proc. § 492.010(1).) Thus, Xie's allegations (i) his translation of the two written contracts varies from (ii) those provided by Plaintiff Yu are immaterial.

Dispositive is what Xie does not deny. Here, Xie does not deny that (A) he received $1 million from Plaintiff Yu developing a commercial property in San Jose; that (B) Xie had

repaid to Plaintiff Yu only $266,700, despite his written agreement to repay the full $1 million in addition to interest and profit sharing; and that (C) he still owes at least $733,300 to Plaintiff Yu. In fact, Xie's declaration does not even mention this issue, much less providing evidence to the contrary. (*See* Xie Opp. *generally*.)

In fact, Xie received $1 million from all three Plaintiffs Yu, Liao, and Palm Street Capital. Plaintiffs Liao and Palm Street Capital's bank records are attached to the Declaration of Zheng Liu accompanying this paper. (Liu Decl., ¶¶ 4-6; Ex. B-C.) Plaintiff Yu's bank records are being subpoenaed from her bank, because Plaintiff Yu closed that account some time ago and thus monthly statements of that account must now be obtained manually through the bank's back office. (Liu Decl., ¶ 7.)

In sum, an attachment should issue: the parties do not dispute that Xie owes at least $733,300 to Plaintiff Yu; and "an attachment may be issued in ***any action for the recovery of money*** brought against" a non-California resident like Xie under Cal. Code Civ. Proc. § 492.010(1).

3. **Plaintiff Yu's claim arises out of Xie's conduct in a trade, business, or profession**

The parties do not dispute that Plaintiff Yu's claim against Xie arises out of Xie's development and management of a commercial real property in San Jose (the San Jose Lot). Namely, Plaintiff Yu affirms that she "invested $1 million in exchange for (1) Defendant Xie managing the development of San Jose Lot into 4-5 single family house." (ECF 48; declaration of Hailing Yu, ¶¶ 2-4.). Xie agrees that his participation in the San Jose Lot led to Plaintiff Yu claims. (*See* ECF 57: Opp., 5:18-23.)

Xie disputes only his degree of involvement in the San Jose Lot. Xie claims that he was merely "one of the investors." (ECF 57: Opp., 5:18-23.) But Xie is contradicted by his own proffered translation of the two written contracts, which identifies Xie as the sole

"project manager" and the sole "investee" (the person who received money from three Plaintiff "investors." (*See* ECF 57-2, page 3, line 3 and page 6, signature block.)

Last, Xie having provided no explanation, much less proof whatsoever, his claim of being a "victim" of the San Jose Lot project is baseless.

In sum, given (1) Xie's admitted roles as the sole "project manager" and the sole "investee" and (2) Xie's undisputed receipt of $1 million from Plaintiff Yu "in exchange for … Xie managing the development of San Jose Lot into 4-5 single family house," Plaintiff Yu's claim against Xie arises out of Xie's conduct in a trade, business, or profession.

**4. Xie's threat of filing counterclaims is irrelevant and frivolous**

Opposing the writ of attachment, Xie threatens to file counterclaims against Plaintiffs. Whether Xie files good faith counterclaims or not is governed by Rule 11, but in any event is not a defense against a writ of attachment. Xie's threats show only his desperation, not the merit of defense.

**5. Xie's outlandish fraud claims based on his inadequate understanding of the English language must be rejected**

Lacking a legitimate defense, Xie continues making outlandish fraud-on-this-Court claims against Plaintiffs and their counsel. Previously, Xie repeatedly accused Plaintiffs' counsel Ms. Guo of perjury and sought hefty sanctions against Ms. Guo. (*See* ECF 31-35.) Shifting target, Xie now accuses Plaintiff Yu of perjury and malicious prosecution. To this misguided end, Xie alleges three distinctions between his translation of the two written contracts at issue and that preferred by Plaintiff Yu. (*See* ECF 57: Opp., 5, the summary table.)

None has merit.

///

### i. The first distinction between the parties' preferred translations is immaterial and irrelevant

Here, Xie's proposed translation does not meaningfully differ from that of Plaintiff Yu. Xie believes that an extra sentence ("The entire project is now complete.") should be added to clarify that the Second Written Contract (ECF 48-2; declaration of Hailing Yu, Ex. B) *expressly* states that Xie had completed purchasing the real property and building units on the San Jose Lot.

In contract, Plaintiff Yu's preferred translation *implies* that Xie had completed purchasing the San Jose Lot and building units on the Lot such that Xie had become obligated to (i) return the $1million investment principle and (ii) "give 30% investment return to each Investor" as required under the First Written Contract.

Despite the different choices of words, the parties proposed translations both express the same idea—Xie had finished not only the land purchase but also the unit construction and thus became obligated to return Plaintiffs' investment principle in addition to their returns on investment.

In fact, Xie's proposed translation works against him. Because Xie's proposed translation expressly concedes that "[t]he entire project is now complete," Xie has no excuse but to, as required by the First Witten Contract, "facilitate the settlement of [Plaintiffs'] investment" and provide "a return on investment of no less than 10%, which will be distributed in proportion to the actual income **after the completion of the project."**

Thus, Xie's proposed translation shows that Xie breached the First and Second Written contracts: Xie apparently has not settled (paid back) Plaintiff Yu's $1 million investment, nor provided a 10% return on her investment.

///

### ii. The second difference between the parties' preferred translations is immaterial

Here, Xie's proposed translation also does not meaningfully differ from that of Plaintiff Yu. Xie believes that the last sentence in the Second Written Contract (ECF 48-2; declaration of Hailing Yu, Ex. B) should be translated into the phrase "This is to certify the above!"; whereas Plaintiff Yu prefers "It is hereby agreed to by all parties!"

These two proposed translations convey the same meaning—Xie and the three Plaintiffs are all in agreement with the terms of the Second Written Contract.

In fact, Xie's proposed translation works in his disfavor, stating that Xie "certify[ied]" under the penalty of perjury that he had agreed to return "the total amount is $3.9 million" to Plaintiffs. (*See United States SEC v. Jensen* (9th Cir. 2016) 835 F.3d 1100; internal citations omitted ["The dictionary definition of "certify" is to testify by formal declaration, often in writing; to make known or establish (a fact); or to guarantee the quality or worth of; vouch for something. Thus, by definition, one cannot certify a fact about which one is ignorant or which one knows is false."].)

### iii. The third distinction between the parties' preferred translations and irrelevant

Here, Xie's proposed translation again does not meaningfully differ from that of Plaintiff Yu. Xie believes that the second portion of the paragraph 6 of the First Written Contract (ECF 48-2; declaration of Hailing Yu, Ex. A) should be translated into the phrase "Party B [Defendant Xie] *assures* Party A [Plaintiff Yu] a return on investment of no less than 10%"; whereas Plaintiff Yu prefers "Party B [Defendant Xie] *personally guarantees* Party A [Plaintiff Yu] a return on investment of no less than 10%."

First, these two proposed translations are essentially the same. Both identify Xie as promising Plaintiff Yu "a return on investment of no less than 10%."

Second, this distinction is irrelevant to this writ of attachment application. Plaintiff Yu seeks an attachment against Xie on **her $1million principle** only, not Xie's promised return on this $1million principle.

Further, a party to both the First and Second Written Contract, Xie is not being sued as a personal guarantee on a third party's contract. Thus, whether Xie "personally guarantees" (as preferred by Plaintiff Yu) or "assures" (as preferred by Xie) "a return on investment of no less than 10%" is irrelevant, because neither translation exposes Xie to labilities as a personal guarantor.

In sum, Xie's three alleged distinctions are without difference.

**C. CONCLUSION**

In sum, Xie does not deny that (A) he received $1 million from Plaintiff Yu for developing a commercial property in San Jose; that (B) Xie had repaid to Plaintiff Yu only $266,700, despite his written agreements to repay the full $1 million in addition to interest and profit sharing; and that (C) he still owes at least $733,300 to Plaintiff Yu.

An attachment should thus issue against the non-California resident Xie under Cal. Code Civ. Proc. § 492.010(1): Plaintiff Yu is seeking the recovery of her the remaining $733,300 Xie owes her in this case.

Dated:  February 28, 2023                                  Respectfully submitted,

By _____
Zheng "Andy" Liu (SBN 279327)

## PLAINTIFF YU'S OBJECTIONS TO EVIDENCE

Plaintiff Yu objects to Defendant Xie's Opposition to Plaintiff Yu's Application for Writ of Attachment. (ECF 57) as follows:

### EVIDENTIARY OBJECTION NO. 1

**Material Objected to**: the entire SECTION II – entitled "FACTUAL BACKGROUND."

**Grounds for Objection**:

**1. Not supported by affidavit or declaration.**

C. L. R. 7-5: "Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record. "

**2. Lack of Foundation, Hearsay**. Fed. R. Evid. 601.

Counsel cannot testify to alleged facts personally known only to Defendant Xie.

Dated:  February 28, 2023                                              Respectfully submitted,

By _____
Zheng "Andy" Liu (SBN 279327)