UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALM STREET CAPITAL LLC, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>CAIXING XIE,<br><br>          Defendant. | Case No. 22-cv-01932-NC<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 19(B)**<br><br>Re: ECF 78 |

Before the Court is Defendant's Motion to Dismiss the First Amended Complaint on the basis that the joinder of requested parties would defeat diversity and that those parties are indispensable to resolution of the dispute. Defendant has not carried its burden of showing that the parties it seeks to join are indispensable. Accordingly, the Motion to Dismiss is DENIED.

**I.     BACKGROUND**

Throughout this litigation, the parties have accused each other of lying about basic facts of this case. A Motion to Dismiss is not the place to resolve these disputes. The Court will summarize the allegations in the complaint.

In March 2017, Defendant approached Plaintiffs about a lot in San Jose, and Defendant Xie solicited $1 million investment from each of the Plaintiffs for developing the San Jose Lot into five residential units. ECF 11 at ¶ 14-15.  Each Plaintiff entered into an identical investment agreement with Defendant Xie, investing $1 million per person in

1  exchange for a guaranteed annual return of $100,000. Defendant Xie purchased the San
2  Jose Lot for $1.6 million and did some construction on it. Overall, however, Defendant Xie
3  was slow to perform. ECF 16. As a result, Plaintiffs met with Defendant and asked him to
4  form an LLC co-owned by all the parties. He said he would. *Id.* at ¶ 17-18.

5  Two years later, by October 2019, Defendant Xie had constructed only three units
6  (rather than four or five as originally agreed to) on the San Jose Lot and immediately sold
7  all three units. Defendant Xie, however, kept all sales proceeds to himself without
8  distributing a dime to any of the Plaintiffs. Defendant Xie orally agreed that sales proceeds
9  of each unit would be distributed to Plaintiffs as soon as a unit was sold. *Id.* at 19-20

10  On December 14, 2019, Defendant Xie presented, to each Plaintiff, three checks
11  totaling $1.3 million: the first check was for $400,000; the second check was for $500,000;
12  and the third check was for $400,000. Defendant Xie, however, at the same time of
13  presenting these checks, required Plaintiffs not to deposit them until "a few days later" due
14  to a cash flow issue. This cash flow issue was never resolved. *Id.*

15  On February 7, 2020, Plaintiffs and Defendant Xie entered into a second written
16  contract (the "Second Contract"), which requires Defendant Xie to repay each Plaintiff the
17  $1 million principal and 30% return, totaling $1.3 million in exchange for Plaintiffs to
18  refrain from suing Defendant Xie at that time. *Id.* at ¶ 30. To assure Plaintiffs that the
19  repayments were underway and that he had the ability to repay, Defendant Xie showed
20  Plaintiffs a screenshot of his China bank account having a balance of 30 million Chinese
21  Yuan (equivalent to approximately $5 million in U.S. dollars). *Id.* at ¶ 31. On March 2,
22  2021, Plaintiffs received a total payment of $800,000—allegedly the only time Defendant
23  Xie ever paid. *Id.* at ¶ 33. From that point on, Defendant Xie refused and continues to
24  refuse making any repayments to Plaintiffs. *Id.* at ¶ 36.

25  On March 5, 2017, Defendant Xie indeed formed a California Limited Liability
26  Company for real estate investment purposes called FutureTech Capital LLC. Defendant
27  Xie was the sole manager and member of FutureTech Capital LLC. *Id.* at ¶ 37. Plaintiffs
28  allege that Defendant Xie diverted and continues to divert all money due for repayment to

1   Plaintiffs under the First Contracts and Second Contract first into the FutureTech Capital
2   LLC and later into the FutureTech Capital corporation. *Id.* at ¶ 39.
3   Between March 8, 2018 and July 26, 2021, Defendant Xie then sold his shares of
4   FutureTech Capital to Daniel Duyu Hua and Yuhua Jin. Defendant Xie did not receive
5   reasonably equivalent value in exchange for transferring his shares in FutureTech Capital
6   to Daniel Duyu Hua and Yuhua Jin. Daniel Duyu Hua and Yuhua Jin became shareholders
7   of FutureTech Capital without providing Defendant Xie reasonably equivalent value in
8   exchange. *Id.* at 43-44.
9   Plaintiffs asserts nine causes of action: Five for breach of contract; one for specific
10  performance; and three for fraudulent transfer.

## II.  LEGAL STANDARD

### A. Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. Joinder

Rule 19(a) requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations.*" Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 986 (N.D. Cal. 2011). Where a party is required to be joined but cannot be joined, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The moving party has the burden of persuasion in arguing for dismissal. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d

3

1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

### A. Judicial Notice

Preliminarily, Defendant asks this Court to take judicial notice of the closure of a parallel state case. Ordinarily, the Court would be inclined to do so, as the status of state court cases is a matter of public record. However, here, each party has accused the other of lying about the status of the case. Therefore, it is in dispute. More to the point, the Court considers the status of the underlying state case only marginally relevant to any part of the joinder analysis. Accordingly, the Motion for Judicial Notice is DENIED.

### B. Joinder

Here, Defendant moves to join Welkin International, FutureTech, Daniel Duyu Hua and Yuhua Jin on the grounds that they are indispensable parties under Fed. R. Civ. P. 19(a). It is undisputed that this joinder would destroy diversity because the parties sought to be joined are California residents and are not diverse from Plaintiffs.

The first question is whether these four parties are necessary parties. This analysis is rendered difficult by the unwillingness of the parties to agree on even basic facts about who these parties are and what roles they play in this litigation. Nonetheless, based on the record before it, the Court concludes that the parties are not necessary. The Ninth Circuit's analysis of what makes an absent person a necessary party under Rule 19(a)(1) consists of two broad inquiries. *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015). First, under Rule 19(a)(1)(A), can complete relief be provided to existing parties without the absent person? *Id.* Second, in the alternative, under Rule 19(a)(1)(B), does the absent person claim an interest that relates to the subject of the action? *Id.*

With respect to Welkin International, Defendant claims that the Court cannot provide complete relief without Welkin because money was provided through Welkin, not Xie personally. With respect to FutureTech, Defendant claims that:

> "Plaintiffs request an order declaring the transaction made by
> FutureTech be set aside and declare void…. However, this Court

4

> cannot "accord complete relief" and would "impede the person's ability to protect the interest [i.e. FutureTech's ownership right to its properties]" in the absence of FutureTech, because issuing an Order against and in FutureTech's absence is a severe violation of its Constitutional Right to Due Process as they have not been served with Plaintiffs' claims, have not been heard, and have not opportunity to assert defenses our counter-claims. It also causes FutureTech to multiple obligations as FutureTech's monetary assets belong to its shareholder."

ECF 78 at 8.

Defendant makes the same arguments with regard to Hua and Jin who have ownership rights to FutureTech shares.

Plaintiffs responds that the parties are not necessary because full relief can be afforded without them. "With respect to Welkin international the causes of actions in this case are founded on two written contracts between Plaintiffs and ***Xie himself***. Xie's shell company Welkin International did not sign any of the two contracts and is thus not a party to any of these two contracts. While it is true that Plaintiffs did transfer their $3 million to Welkin International, Plaintiffs made the transfers based on Xie's instructions under the two written contracts. Plaintiffs thus is not required to—and in fact cannot—sue Welkin International for breach of contract: because Welkin International is not a signor to neither contract at issue." ECF 79 at 9.

With respect to FutureTech, Plaintiffs alleges that FutureTech was never even alleged to be party to the contract. With respect to Hua and Jin, Plaintiffs argue that Hua and Jin have never claimed interest in the litigation. *Id.*

Taking all of that into account, the Court concludes that Defendant has not carried his burden to show that the any of the four parties are necessary parties. Despite repeated allegations that the absent parties would suffer constitutional violations in the absence of joinder, Defendant never makes clear what the prejudice actually would be, nor what is stopping those clients from vindicating any claims that they may have in a state forum.

With respect to Welkin International, it is undisputed that Welkin was not a party to the disputed agreement. With respect to FutureTech, Defendant Xie has not provided a reason why it is necessary to differentiate between his interests and FutureTech's interests

in this case. To the extent that FutureTech is more relevant to the fraudulent transfer claim, they still have not claimed an interest in this case.

With respect to Hua and Jin, Defendant has not made clear why complete relief cannot be provided in their absence. Even if they have ownership rights in shares of FutureTech, it is not obvious why the outcome of this case would affect those interests. Defendant's assertions to the contrary are conclusory. Hua and Jin also have not claimed an interest in the outcome of Xie's dispute with Palm Street. The Complaint does, in its fraudulent transfer claims, allege that Hua and Jin did not pay Xie appropriately when he transferred shares of FutureTech. But the dispute between Xie and his shareholders appears different than the one he has with Palm Street. Hua and Jin have not claimed interest in this litigation.

The Contractual dispute at the core of this case is between the existing Plaintiffs and Defendant. The Motion to Dismiss is DENIED.

## IV. CONCLUSION

Because Defendant Xie has not carried his burden to show that the parties are indispensable to the claims between him and Plaintiffs, the Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: August 21, 2023

_____
NATHANAEL M. COUSINS
United States Magistrate Judge